GARY A. BORNSTEIN (*Pro Hac Vice*)
YONATAN EVEN (*Pro Hac Vice*)
BENJAMIN GRUENSTEIN (*Pro Hac Vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

DAVID A. KAYS, ESQ. (SBN 120798)
WILLIAM SIAMAS, ESQ. (SBN 133111)
FREEDA YLLANA LUGO, ESQ. (SBN 244913)
MORGAN, FRANICH, FREDKIN, SIAMAS & KAYS
333 West San Carlos Street, Suite 1050
San Jose, California  95110
Telephone: (408) 288-8288
Facsimile:  (408) 288-8325

Attorneys for Applicant
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re Ex Parte Application of QUALCOMM INCORPORATED, <br><br> Applicant, <br><br> For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Apple Inc. for Use in a Foreign Proceeding | Miscellaneous Action No. 16-mc-80002-PSG <br><br> QUALCOMM INCORPORATED'S OMNIBUS REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS EX PARTE APPLICATIONS FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS |

(additional captions on following pages)

| | |
|---|---|
| In re Ex Parte Application of QUALCOMM INCORPORATED, | Miscellaneous Action No. 16-mc-80003-PSG |
| Applicant, | QUALCOMM INCORPORATED'S OMNIBUS REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS EX PARTE APPLICATIONS FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS |
| For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Intel Corporation for Use in a Foreign Proceeding | |

| | |
|---|---|
| In re Ex Parte Application of QUALCOMM INCORPORATED, | Miscellaneous Action No. 16-mc-80005-PSG |
| Applicant, | QUALCOMM INCORPORATED'S OMNIBUS REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS EX PARTE APPLICATIONS FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS |
| For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from MediaTek USA, Inc. for Use in a Foreign Proceeding | |

| | |
|---|---|
| In re Ex Parte Application of QUALCOMM INCORPORATED, | Miscellaneous Action No. 16-mc-80006-PSG |
| Applicant, | QUALCOMM INCORPORATED'S OMNIBUS REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS EX PARTE APPLICATIONS FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS |
| For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC for Use in a Foreign Proceeding | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re Ex Parte Application of
QUALCOMM INCORPORATED,

Applicant,

For an Order Pursuant to 28 U.S.C. § 1782
Granting Leave to Obtain Discovery from
Texas Instruments Incorporated for Use in a
Foreign Proceeding

Miscellaneous Action No. 16-mc-80007-PSG

QUALCOMM INCORPORATED'S
OMNIBUS REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS EX
PARTE APPLICATIONS FOR AN
ORDER PURSUANT TO 28 U.S.C.
§ 1782 GRANTING LEAVE TO
OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    BACKGROUND .................................................................................................1

II.   THE INTEL FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY ...............5

     A.    The Companies' Cooperation with KFTC Investigators Does Not Make Qualcomm's Applications Unnecessary. ...................................................6

     B.    The Ultimate KFTC Decisionmakers Will Be Receptive to Evidence Obtained by Qualcomm. ....................................................................9

     C.    Qualcomm's Applications Do Not Circumvent Korean Procedures, and the Policy Concerns in the Amicus Letter Can Be Accommodated. ...................11

     D.    Qualcomm's Requests Are Narrowly Tailored and Justified by the Significance of the Matter. ...............................................................16

III.  THE SAMSUNG ENTITIES ARE FOUND IN THIS DISTRICT. .................................22

IV.   THIS COURT MAY AUTHORIZE THE DISCOVERY OF DOCUMENTS OUTSIDE THE UNITED STATES. ........................................................................26

V.    CONCLUSION ................................................................................................29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

<u>Advanced Micro Devices v. Intel Corp.</u>, No. C 01-7033, 2004 WL 2282320 (N.D. Cal. Oct. 4, 2004)........................................................................................14, 20, 22

<u>Ahmad Algosaibi & Bros. v. Standard Chartered Int'l (USA) Ltd.</u>, 785 F. Supp. 2d 434 (S.D.N.Y. 2011)........................................................................17, 23

<u>Application of Sarrio, S.A.</u>, 119 F.3d 143 (2d Cir. 1997) ...........................................28

<u>Bancroft & Masters</u>, 223 F.3d 1082 (9th Cir. 2000)....................................................26

<u>Blackwell v. Marina Assocs.</u>, No. Civ.A. 05-5418, 2006 WL 573793 (E.D. Pa. Mar. 9, 2006)......................................................................................................25

<u>Coremetrics, Inc. v. Atomic Park.com, LLC</u>, 370 F. Supp. 2d 1013 (N.D. Cal. 2005) .................................................................................................................24, 27

<u>Ex Parte Rigby</u>, No. 13-cv-0271 MMA (MDD), 2013 WL 622235 (S.D. Cal. Feb 19, 2013) ...........................................................................................................9

<u>FTC v. Sysco Corp.</u>, 83 F. Supp. 3d 271 (D.D.C. 2015) ..............................................16

<u>Grynberg v. Ivanhoe Energy, Inc.</u>, 490 Fed. App'x 86 (10th Cir. 2012)......................25

<u>Hirsch v. Blue Cross, Blue Shield of Kansas City</u>, 800 F.2d 1474 (9th Cir. 1986)......................26

<u>In re Application of Chevron Corp.</u>, 709 F. Supp. 2d 283 (S.D.N.Y. 2010), <u>aff'd</u> sub nom. <u>Chevron Corp. v. Berlinger</u>, 629 F.3d 297 (2d Cir. 2011) ......................................11

<u>In re Application of Eli Lilly & Co.</u>, No. 3:09MC296 (AWT), 2010 WL 2509133 (D. Conn. June 15, 2010) ..............................................................................28

<u>In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf</u>, No. Civ. M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)........................................28, 29

<u>In re Application of Grupo Qumma</u>, No. M 8-85, 2005 WL 937486 (S.D.N.Y. 2005) ...............................................................................................................11

<u>In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.</u>, No. 08-20378-MC, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011) ...........................................24

<u>In re Application of Nokia Corp.</u>, No. 1:07-MC-47, 2007 WL 1729664 (W.D. Mich. June 13, 2007) ........................................................................................26

*In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) .................................................................................8

*In re Application of Thai-Lao Lignite (Thai.) Co.*, 821 F. Supp. 2d 289 (D.D.C. 2011) ...........................................................................................27, 29

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2012 WL 6878989 ...............................13, 17, 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.* No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013) ....................................................8, 10, 13

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV. 1801 NRB, 2014 WL 3404955 (S.D.N.Y. July 9, 2014) .................................................................................27

*In re Chevron Corp.*, No. 11-24599-CV, 2012 WL 3636925 (S.D. Fla. June 12, 2012) ..........................................................................................................28

*In re Edelman*, 295 F.3d 171 (2d Cir. 2002) ......................................................9, 23, 29

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. Civ. A. H-01-3624, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) ...................................................18

*In re Ex Parte Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043 (N.D. Cal. May 2, 2012) ....................................................................................................17

*In re Ex Parte Application of Nokia Corp.*, No. 513MC80217EJDPSG, 2013 WL 6073457 (N.D. Cal. Nov 8, 2013) .............................................................9

*In re Ex Parte Application of Ontario Principals' Council*, No. 5:13-mc-80237-LHK-PSG, 2013 WL 6073517 (N.D. Cal. Nov. 8, 2013)...............................19, 22

*In re Ex Parte LG Elecs. Deutschland GmbH*, No. 12CV1197-LAB MDD, 2012 WL 1836283 (S.D. Cal. May 21, 2012).......................................................7

*In re Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007)....................................................24

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103 (D. Nev. May 28, 2015)........................7

*In re Kreke Immobilien KG*, No. 13 Misc. 110 NRB, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) .............................................................................8, 13

*In re Letter of Request From Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686 (D.C. Cir. 1989) .....................................................................15

*In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006) ....................................8, 9

<u>In re Microsoft Corp.</u>, No. C 06-80038 JF (PVT), 2006 WL 825250 (N.D. Cal. Mar. 29, 2006)..................................................................................................14

<u>In re Potanina</u>, No. 14 MISC. 31 LAP, 2015 WL 750656 (S.D.N.Y. Jan. 9, 2015).....................29

<u>In re Republic of Ecuador</u>, No. C-10-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ...........................................................................................17, 21, 28

<u>In re Request for Int'l Judicial Assistance from the Nat'l Court Admin. of the Republic of Korea</u>, No. C15-80069 MISC LB, 2015 WL 1064790 (N.D. Cal. Mar. 11, 2015).......................................................................................10, 15

<u>In re Roebers</u>, No. C12-80145 MISC RS LB, 2012 WL 2577585 (N.D. Cal. July 3, 2012).................................................................................................25

<u>In re Rosuvastatin Calcium Patent Litig.</u>, No. CIV. 07-359-JJF-LPS, 2009 WL 4800702 (D. Del. Dec. 11, 2009), <u>report and recommendation adopted,</u> No. CIV.A 07-805-JJF, 2010 WL 661599 (D. Del. Feb. 19, 2010) ..............................................25

<u>In re Veiga</u>, 746 F. Supp. 2d 8 (D.D.C. 2010) ...............................................................22

<u>In re WorldCom, Inc. Sec. Litig.</u>, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ....................................18

<u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241 (2004) ......................................passim

<u>Jones v. Blige</u>, No. 04-60184, 2006 WL 1329247 (E.D. Mich. May 16, 2006)..........................25

<u>King v. Am. Family Mut. Ins. Co.</u>, 632 F.3d 570 (9th Cir. 2011)..........................................26

<u>Matter of Application of O2CNI Co.</u>, No. C 13-80125 CRB (LB), 2014 WL 689082 (N.D. Cal. Feb. 21, 2014)..................................................................17

<u>Matter of Application of O2CNI Co.</u>, No. C13-80125 CRB (LB), 2013 WL 5826730 (N.D. Cal. Oct. 29, 2013)................................................................22

<u>Merlino v. Harrahs Entm't, Inc.</u>, No. 05 CV 6660, 2006 WL 401847 (E.D. Pa. Feb. 17, 2006) ...........................................................................................25

<u>Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.</u>, No. CIV.A. H-10-1708, 2012 WL 590926 (S.D. Tex. Feb. 22, 2012) ..........................................25

<u>Overhill Farms, Inc. v. W. Liberty Foods LLC</u>, No. CV 14-03533-RSWL, 2014 WL 4180920 (C.D. Cal. Aug. 21, 2014)...............................................................26

<u>Presidio Home Care, LLC v. B-East, LLC</u>, No. CV 14-1864 RSWL JEMX, 2014 WL 2711299 (C.D. Cal. June 13, 2014) ..........................................................26

<u>Ratzlaf v. United States</u>, 510 U.S. 135 (1994)..................................................................28

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Republic of Ecuador v. Stratus Consulting, Inc., No. 13-CV-01112-REB-KLM,
    2013 WL 2352425 (D. Colo. May 29, 2013)..........................................................18

Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292 (10th Cir. 1999)...........................25

Thompson v. Doel, No. 5:13-mc-80088-EJD (PSG) (N.D. Cal. May 21, 2013),
    ECF No. 2 ...........................................................................................21

Travelers Cas. & Sur. Co. v. Interclaim (Berm.) Ltd., 304 F. Supp. 2d 1018 (N.D.
    Ill. 2004).............................................................................................25

United States ex rel. Banignan v. Organon USA Inc., No. CIV.A. 07-12153-
    RWZ, 2012 WL 1190826 (D. Mass. Apr. 9, 2012) .......................................25

World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of N.Y.,
    Inc., No. C 11-01442 SBA, 2011 WL 5118525 (N.D. Cal. Oct. 28, 2011).....................26

**Statutes & Rule**

28 U.S.C. § 1782.............................................................................. passim

Cal. Corp. Code § 191(a) ............................................................................25

Cal. Corp. Code § 2105(a) ...........................................................................25

Fed. R. Civ. P. 26(b)(1)...............................................................................22

**Other Authority**

Free Trade Agreement Between the United States of America and
    the Republic of Korea .............................................................................4

QUALCOMM'S OMNIBUS REPLY MEMORANDUM          Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG,
                                             16-mc-80006-PSG, 16-mc-80007-PSG

1    Qualcomm Incorporated ("Qualcomm") respectfully submits this omnibus reply

2    memorandum in further support of its applications to obtain discovery pursuant to 28 U.S.C.

3    § 1782.  Qualcomm filed seven applications seeking discovery from the following companies:

4    Apple Inc. ("Apple"); Broadcom Corp.; Intel Corp. ("Intel"); MediaTek USA, Inc.

5    ("MediaTek"); Samsung Electronics Co., Ltd. ("Samsung Electronics"), Samsung Electronics

6    America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA") (together,

7    "Samsung"); Texas Instruments Inc. ("TI"); and VIA Technologies, Inc.[1]  Five of those

8    companies—Apple, Intel, MediaTek, Samsung and TI (together, the "Companies")—have

9    opposed Qualcomm's applications.[2]  Of those five, Apple, Intel and TI do not dispute that the

10    statutory requirements for granting Qualcomm's applications have been met.  All five

11    Companies, however, argue that this Court should decline to grant the requested discovery based

12    upon the considerations set forth in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241,

13    264-65 (2004).

14    Because the primary thrust of the oppositions is to assert that the KFTC already has the

15    information it needs and opposes the applications, Qualcomm begins by clarifying relevant

16    features of the KFTC proceedings, including what is and is not available to the KFTC (or to

17    Qualcomm) and which organs within the KFTC have that information.  We then demonstrate

18    why, based on those facts, the <u>Intel</u> considerations weigh in favor of granting Qualcomm's

19    requested discovery.  We end by addressing individualized objections raised by Samsung and

20    MediaTek.

21  **I.    BACKGROUND**

22    The KFTC is an administrative agency that administers Korean competition law,

23    investigates compliance and determines whether violations have occurred.  (Lee Reply Decl.

24

25

26    [1] Each of Qualcomm's Ex Parte Applications is hereinafter referred to as "App.":  Apple App. (No. 16-mc-80002-PSG, ECF no. 1); Intel App. (No. 16-mc-80003-PSG, ECF no. 1); MediaTek App. (No. 16-mc-80005-PSG, ECF

27    no. 1); Samsung App. (No. 16-mc-80006-PSG, ECF no. 1); and TI App. (No. 16-mc-80007-PSG, ECF no. 1).
       [2] Each Opposition is hereinafter referred to as "Opp.":  Apple Opp. (No. 16-mc-80002-PSG, ECF no. 22); Intel Opp.

28    (No. 16-mc-80003-PSG, ECF no. 25); MediaTek Opp. (No. 16-mc-80005-PSG, ECF no. 21); Samsung Opp.
       (No. 16-mc-80006-PSG, ECF no. 16); and TI Opp. (No. 16-mc-80007-PSG, ECF no. 19).

¶ 5.)[3]  The investigation of Qualcomm was undertaken by a case team within the KFTC's Anti-Monopoly Bureau.  (Lee Reply Decl. ¶ 6.)  The case team is led by an Examiner, who serves as Director General of the Anti-Monopoly Bureau.  (Lee Reply Decl. ¶ 6.)  The current Examiner is the signatory to the amicus letter submitted to the Court on January 21, 2016.[4]  (Lee Reply Decl. ¶ 6.)  The Examiner has initial responsibility for investigating possible violations of competition law and has the authority to require the production of documents and information from the target of the investigation as well as from third parties.  (Lee Reply Decl. ¶ 7.)  At the conclusion of the Examiner's investigation of Qualcomm, the Examiner prepared an Examiner's Report ("ER") with his findings and conclusions regarding the matters under investigation and his recommendations to the KFTC on remedies.  (Lee Reply Decl. ¶ 8.)  The ER is akin to a statement of the charges against Qualcomm and does not itself have any binding legal force. (Lee Reply Decl. ¶ 8.)

Upon the issuance of the ER, the KFTC proceedings enter what is known as the hearing phase, which is where the matter currently stands.  (Lee Reply Decl. ¶ 9.)  Qualcomm now has an opportunity to submit a written response to the ER.  Both the ER and Qualcomm's response will be reviewed by the Commissioners of the KFTC (also referred to as the "KFTC Committee").  (Lee Reply Decl. ¶ 9.)  The KFTC Committee is also required to hold at least one hearing on the matter.  At the hearings, the Examiner will present its position charging Qualcomm with violations, and Qualcomm will defend itself against those charges.  (Lee Reply Decl. ¶ 9.)  Thus, during the current hearing phase of the proceedings, Qualcomm and the Examiner are in adversarial roles.  After the hearings, the KFTC Committee issues its own decision with its own findings and conclusions, and if it finds a violation, the KFTC Committee will decide the appropriate remedy.  (Lee Reply Decl. ¶ 9.)

The first step in the hearing phase of the proceedings is for the Examiner to transmit the ER to the General Counsel's office of the KFTC, which dockets the case and manages its

---

[3] References to the "Lee Reply Decl." are to the Reply Declaration of Changhun Lee in Support of Qualcomm's Ex Parte Applications, signed on February 7, 2016 (Pacific time) and filed together with this Reply.
[4] The KFTC Examiner's amicus letter is hereinafter referred to as the "KFTC Ltr." and may be found on the Apple docket, No. 16-mc-80002, at ECF no. 16.

1   progress through the hearings.  (Lee Reply Decl. ¶ 9.)  The ER must have attached to it

2   "evidential materials supporting recognition of fact or judgment of illegality", which are referred

3   to in the KFTC's Case Handling Procedures as "appended data".  (Lee Reply Decl. ¶ 10; KFTC

4   Ltr. Ex. B at 42 (Rules on the FTC's Committee Operation and Case Handling Procedure, Korea

5   Fair Trade Commission ("KFTC Case Handling Procedures"), Art. 29(9), (10)).)  Under the

6   rules, the Examiner simultaneously transmits the ER to the target of the investigation along with

7   the appended data, subject to provisions allowing the Examiner to withhold materials on

8   confidentiality and other grounds.  (Lee Reply Decl. ¶ 10; see also KFTC Ltr. Ex. B at 42 (KFTC

9   Case Handling Procedures, Art. 29(10), (12)).)  The target may then request access to the

10  appended data that has been withheld.  (Lee Reply Decl. ¶ 10 (citing KFTC Case Handling

11  Procedures Art. 29-2).)  Importantly, the Examiner is ***not*** required by any provision of the Case

12  Handling Procedures to give the target, General Counsel's office or the KFTC Committee any

13  underlying evidentiary documents other than the appended data.  (See Lee Reply Decl. ¶ 11.)  As

14  Samsung's opposition states, the Examiner "chooses what information to submit to the KFTC

15  Committee".  (Samsung Opp. at 17.)

16      When Qualcomm received the ER, it also received a subset of the exhibits to the ER.

17  (Lee Reply Decl. ¶ 10.)  Qualcomm requested access to the remaining exhibits and has since

18  received some of them, many with redactions, and the KFTC is still processing the request for

19  other exhibits.  (Lee Reply Decl. ¶ 10.)  As noted, however, the KFTC Case Handling

20  Procedures do not provide any mechanism for Qualcomm to access documents that were

21  provided by third parties to the Examiner but that were not designated as exhibits to the ER.

22  (Lee Reply Decl. ¶ 11.)  Nor do KFTC procedures provide Qualcomm any way of compelling

23  the production of any other documents or testimony to support Qualcomm's defense.  (Lee Reply

24  Decl. ¶ 11.)

25      Some of the Companies' oppositions (see, e.g., Intel Opp. at 5) and the Examiner's

26  amicus letter (KFTC Ltr. at 2) suggest these additional documents may be available through

27  Korean laws governing the disclosure of information in the possession of the KFTC, citing

28

QUALCOMM'S OMNIBUS REPLY MEMORANDUM            Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG,
                                               16-mc-80006-PSG, 16-mc-80007-PSG

1  Article 52-2 of the Monopoly Regulation and Fair Trade Act and Article 9 of the Official

2  Information Disclosure Act (which, similarly to the U.S. Freedom of Information Act, permits

3  members of the public to request information in the possession of government agencies).  But

4  these laws have not been interpreted to entitle targets of KFTC proceedings to obtain documents

5  beyond the "appended data" to which they are entitled under the KFTC Case Handling

6  Procedures.  (Lee Reply Decl. ¶ 12.)

7        Because of the limitations imposed by the KFTC Case Handling Procedures on

8  Qualcomm's ability to obtain access to materials in the Examiner's case file that are not

9  appended to the Examiner's Report, Qualcomm on February 5, 2016 made a separate request for

10  access to the entire Examiner's file based in part upon the Korea-U.S. Free Trade Agreement

11  ("KORUS FTA"), which was concluded between the Republic of Korea and the United States on

12  November 22, 2011.[5]  In the KORUS FTA, Korea assumed certain obligations concerning the

13  manner in which it would conduct administrative proceedings regarding alleged violations of its

14  competition laws.  As relevant here, Article 16.1(3) of the KORUS FTA provides that:

15
        Each Party shall ensure that a respondent in an administrative proceeding
16      [ . . . ] is afforded the opportunity to present evidence in its defense and to
        be heard in the hearing.  In particular, each Party shall ensure that the
17      respondent has a reasonable opportunity to cross-examine any witnesses
        or other persons who testify in the hearing and to review and rebut the
18      evidence and any other collected information on which the determination
        may be based."
19

20  Qualcomm believes that the KORUS FTA requires the KFTC to provide Qualcomm access to

21  the contents of the Examiner's entire file.  However, to Qualcomm's knowledge, the KFTC has

22  not previously been presented with any request for access to the case file under the KORUS

23  FTA, nor has it implemented any procedures to meet the obligations that Korea accepted under

24  the KORUS FTA.  (See Lee Reply Decl. ¶ 11.)  In addition, as more fully described below, the

25  § 1782 applications to this Court seek additional categories of documents that may not be in the

26  Examiner's case file but that Qualcomm needs to support its defense before the KFTC

27

28  [5] Free Trade Agreement Between the United States of America and the Republic of Korea, *available at* https://ustr.gov/trade-agreements/free-trade-agreements/korus-fta/final-text (last visited Feb. 7, 2016).

1    Committee.  Accordingly, even if the KFTC were to grant access to the Examiner's case file,

2    Qualcomm's applications would not be mooted.

3         Qualcomm is currently preparing for hearings before the KFTC Committee, which will

4    begin after Qualcomm submits its written response to the ER.  Qualcomm's § 1782 applications

5    are intended to obtain evidence to support its defense at those hearings.  Qualcomm does not

6    now have any other existing procedural vehicle that is recognized by the KFTC to obtain that

7    evidence.

8    **II.    THE INTEL FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY**

9         "Section 1782 is the product of congressional efforts, over the span of nearly 150 years,

10   to provide federal-court assistance in gathering evidence for use in foreign tribunals."  Intel, 542

11   U.S. at 247.  Through the enactment of and subsequent amendments to § 1782, Congress

12   intended to "substantially broaden[] the scope of assistance federal courts could provide for

13   foreign proceedings".  Id. at 247-48.  Accordingly, the Supreme Court has rejected invitations to

14   impose "categorical limitations" and "across-the-board" rules that are not compelled by the text

15   of § 1782.  Id. at 255, 262.  Instead, the Court provided "guides for the exercise of district-court

16   discretion" in determining whether to grant § 1782 applications:  (1) whether "the person from

17   whom discovery is sought is a participant in the foreign proceeding"; (2) the "nature of the

18   foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the

19   foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3)

20   whether the discovery request is "an attempt to circumvent foreign proof-gathering restrictions or

21   other policies of a foreign country or the United States"; and (4) whether the request is "unduly

22   intrusive or burdensome".  Id. at 264-266.  As Qualcomm established in its applications and as

23   further explained below, these factors weigh in favor of granting its requests.  (See Apple App. at

24   7-10; see also Intel App. at 6-9; MediaTek App. at 6-9; Samsung App. at 7-11; TI App. at 6-9.)

25   The Companies' oppositions misapprehend the purpose of § 1782 and the factors that guide

26   district court discretion.

27

28

QUALCOMM'S OMNIBUS REPLY MEMORANDUM          Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG,
                                            16-mc-80006-PSG, 16-mc-80007-PSG

1
2

## A.    THE COMPANIES' COOPERATION WITH KFTC INVESTIGATORS DOES NOT MAKE QUALCOMM'S APPLICATIONS UNNECESSARY.

3    The first consideration under Intel is whether "the person from whom discovery is sought

4    is a participant in the foreign proceeding" such that the foreign tribunal "can itself order [the

5    person] to produce evidence". 542 U.S. at 264. The logic behind this factor is that evidence held

6    by "nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach", so

7    that U.S. court assistance to obtain such evidence is more warranted. Id. Each of the Companies

8    suggests that because they cooperated with or responded to the Examiner's requests for

9    information, this factor weighs against discovery. (See, e.g., Intel Opp. at 9-11.) Some even go

10   further and describe themselves as "participants" or "voluntary participants" in the KFTC

11   proceedings. (Apple Opp. at 7; Samsung Opp. at 13.) But the first Intel factor does not speak to

12   cooperation or voluntary assistance; it addresses whether the person from whom discovery is

13   sought "may be outside the foreign tribunal's reach". 542 U.S. at 264. Here, none of the

14   Companies other than Samsung admits to being within the KFTC's "reach", and none concedes

15   that the KFTC could "order [it] to produce evidence". Cf. id. To the contrary, the Examiner's

16   amicus letter states that § 1782 proceedings afford access to more information than the KFTC

17   has the ability to obtain. (KFTC Ltr. at 3.) That alone should resolve the first factor in favor of

18   granting the application.[6]

19   In addition, the Companies' argument ignores the distinction between the investigative

20   proceedings conducted by the KFTC *Examiner* and the current hearing phase before the KFTC

21   *Committee*, which ultimately will decide whether a violation of Korean competition law has been

22   proven. (Lee Reply Decl. ¶ 9.) The Companies state that they are "participants" because they

23   provided information to the Examiner, but none of them professes to be a participant in the

24   proceedings before the Committee—and it is the submissions to and hearings before the

25   Committee for which Qualcomm now seeks the requested discovery.

26

27

28   [6] By contrast, in Intel, the complainant who initiated an European Commission investigation, AMD, sought discovery from Intel, whom that AMD had asked the Commission to investigate. 542 U.S. at 250-51. There was no concern that Intel's information would be outside the Commission's reach.

6

1       Furthermore, not one of the cases cited by the Companies concerns the unique situation

2   presented here, in which one party in the foreign proceedings has the power to request, obtain

3   and access relevant evidence but the other does not.  Rather, many of the cited cases stand only

4   for the commonsense proposition that courts should hesitate to grant an applicant U.S. discovery

5   that is duplicative of what the applicant can obtain from a party in the foreign proceedings—a

6   concern that is not present here.  For example, in Macquarie Bank, a bank instituted an action in

7   the Netherlands to collect a debt, then sought discovery in Nevada from the debtor's director,

8   who exercised *de facto* control over the debtor and its affiliates.  In re Judicial Assistance

9   Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd., No. 2:14-CV-00797-GMN, 2015 WL

10  3439103, at **1-2 (D. Nev. May 28, 2015).  The Court held that although the bank was seeking

11  discovery from "a related, but technically distinct entity", it effectively was seeking discovery

12  that the defendant in the Netherlands action already had been ordered to produce.  Id. at *6.

13  Similarly, in LG Electronics, LG sought discovery from Qualcomm concerning its licenses with

14  Mitsubishi, which was the plaintiff in the foreign proceedings.  In re Ex Parte LG Elecs.

15  Deutschland GmbH, No. 12CV1197-LAB MDD, 2012 WL 1836283, at *1 (S.D. Cal. May 21,

16  2012).  The court noted that LG could avail itself of foreign discovery procedures to obtain the

17  same documents from Mitsubishi that it was seeking from Qualcomm.  Id. at *2.  These cases do

18  not concern a situation in which one party to the foreign proceedings (here, the Examiner) can

19  obtain documents while the other (here, Qualcomm) may not.  Nor do these cases concern a

20  situation where companies voluntarily provided materials to one side, then tried to avoid

21  providing those and related materials to the other side, knowing that it would not have access to

22  the materials in the foreign proceeding.[7]

23

24  _____

[7] See also In re Kreke Immobilien KG, No. 13 Misc. 110 NRB, 2013 WL 5966916, at **4-5 (S.D.N.Y. Nov. 8,

25  2013) (rejecting application to take U.S. discovery from Deutsche Bank when proposed defendant in foreign
    proceedings was Deutsche Bank's wholly owned subsidiary); In re Cathode Ray Tube (CRT) Antitrust Litig. No. C-

26  07-5944-SC, 2013 WL 183944, at *2 (N.D. Cal. Jan. 17, 2013) (noting that "it is obvious that Sharp actually seeks
    information about [other] Defendants, some of whom are subject to Korean discovery rules as parties to the Korean

27  Litigation"); In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign
    Proceeding, No. M 19-99(RJS), 2009 WL 3335608, at **5-7 (S.D.N.Y. Oct. 15, 2009) (rejecting application to take

28  U.S. discovery of corporate secretary and director of Yukos companies when other Yukos directors were plaintiffs
    in the action and could produce the requested discovery).

1    The Companies also cite cases concerning antitrust matters before the European

2    Commission ("EC").  (See, e.g., Apple Opp. at 9.)  There are two important distinctions to be

3    drawn.  First, many of those cases involved requests for discovery of materials already in the

4    EC's file.  For example, in In re Microsoft Corp., Microsoft sought all materials which IBM and

5    its law firm had provided to the EC during the investigation phase.  428 F. Supp. 2d 188, 190-91,

6    194 (S.D.N.Y. 2006) ("[T]he Commission has (or will have) possession of all of the documents

7    that Microsoft seeks to discover.").  Qualcomm's applications here seek materials *other than*

8    those the KFTC Examiner already received and that are outside the KFTC's "reach".  Accessing

9    those materials is critical to ensure the record before the KFTC is not skewed by the Companies'

10   selective production of information to the Examiner; only through discovery can Qualcomm

11   obtain any exculpatory materials that the Companies chose not to provide.  Second, with respect

12   to materials that are in the KFTC Examiner's file, the EC's procedural rules are critically

13   different from the KFTC's.  The EC's "access-to-file" rules already guaranteed Microsoft the

14   ability to obtain those documents from the Commission under European law.  Id. at 194.  The

15   court denied the application because it was irrelevant whether Microsoft obtained the materials

16   from the EC or directly from IBM and its counsel.  Id.  The KFTC procedures, by contrast, do

17   not provide Qualcomm access to the contents of the Examiner's case file, but rather only those

18   documents the Examiner chooses to designate as exhibits to its Report.  (Lee Reply Decl. ¶ 11.)[8]

19       Some of the Companies argue that it does not matter whether this § 1782 proceeding is

20   Qualcomm's only means for obtaining the requested information, on the erroneous assumption

21   that § 1782 was designed exclusively to assist foreign tribunals, rather than parties like

22   Qualcomm seeking to defend themselves.  (See, e.g., Apple Opp. at 8.)  This argument

23   demonstrates a fundamental misunderstanding of the statute.  Congress intended § 1782 to

24   provide "assistance to foreign and international tribunals *and to litigants* before such tribunals".

25   See 28 U.S.C. § 1782 (emphasis added); In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("The

26   statute has the twin aims of 1) providing equitable and efficient means to assist parties engaged

27

28
_____

[8] Qualcomm has taken the extra step of seeking the Examiner's case file pursuant to the KORUS FTA, but that request is, to the best of Qualcomm's knowledge, unprecedented.  (Lee Reply Decl. ¶ 11.)

1  in international litigation and, by so doing, 2) inviting foreign countries to provide similar

2  assistance to our courts."). Section 1782 thus was intended to provide assistance to persons in

3  exactly Qualcomm's position.

4  The Companies' cooperation with the KFTC Examiner does not make them

5  "participants" in the KFTC Committee proceedings such that either the KFTC Committee or

6  Qualcomm can obtain discovery from them for use in those proceedings. See Intel, 546 U.S. at

7  264. Accordingly, this consideration favors Qualcomm's applications.

8
9  **B.    THE ULTIMATE KFTC DECISIONMAKERS WILL BE RECEPTIVE TO EVIDENCE OBTAINED BY QUALCOMM.**

10  Second, "a court presented with a § 1782 request may take into account the nature of the

11  foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the

12  foreign government or the court or agency abroad to U.S. federal-court judicial assistance".

13  Intel, 542 U.S. at 264. Courts conducting this analysis focus on the utility of the evidence sought

14  and whether the foreign tribunal is likely to receive the evidence. See, e.g., In re Ex Parte

15  Application of Nokia Corp., No. 513MC80217EJDPSG, 2013 WL 6073457, at *3 (N.D. Cal.

16  Nov 8, 2013); Ex Parte Rigby, No. 13-cv-0271 MMA (MDD), 2013 WL 622235, at *3 (S.D.

17  Cal. Feb 19, 2013).[9]

18  The Companies contend that the KFTC will not be receptive to the requested evidence,

19  based primarily on the amicus letter submitted by the Examiner. (Apple Opp. at 8-10; Intel Opp.

20  at 9-14; MediaTek Opp. at 10-12; Samsung Opp. at 14-15; TI Opp. at 5-6.) Their reliance on the

21  amicus letter is misplaced. The letter does not come from the General Counsel's office

22  responsible for administration of the hearing phase of the proceedings or from the KFTC

23  Committee that will make the ultimate decision. (Lee Reply Decl. ¶ 9.) At this stage of the

24  proceedings, the Examiner has already reached a conclusion and presented charges to the KFTC

25

26  [9] Although Samsung argues that courts in the Ninth Circuit "have generally placed the burden on the requesting

27  party . . . to provide facts showing that the foreign court would welcome the proposed discovery", it cites only a Special Master's Report and Recommendation. (Samsung Opp. at 15.) The district judge who reviewed that report pointed out that the issue is "not so clear" and did not rest its decision on the Special Master's conclusion. Cathode

28  Ray Tube, 2013 WL 183944, at *3.

1    Committee and thus does not have "need or use" for the requested discovery, but Korean law and

2    procedure permit Qualcomm to present to the KFTC Committee additional evidence that was not

3    considered by the Examiner.  (Lee Decl. ¶ 13.)  The KFTC Case Handling Procedures expressly

4    permit examinees, such as Qualcomm, to present "necessary materials" to the KFTC Committee

5    in support of their defense, and there is no reason to believe that the Committee will not consider

6    such materials because they were collected through § 1782.  (Lee Reply Decl. ¶ 13.)[10]  Other

7    Korean authorities have obtained evidence through § 1782 for use in Korean proceedings.  See In

8    re Request for Int'l Judicial Assistance from the Nat'l Court Admin. of the Republic of Korea,

9    No. C15-80069 MISC LB, 2015 WL 1064790 (N.D. Cal. Mar. 11, 2015).

10           The Companies fall back on the argument that the KFTC will not be receptive to U.S.

11   court assistance because the Examiner already has obtained the documents the Examiner deemed

12   relevant to the investigation.  (Apple Opp. at 6-8; Intel Opp. at 9-14; MediaTek Opp. at 8-10;

13   Samsung Opp. at 14-15; TI Opp. at 5-6.)  They therefore suggest that the additional evidence

14   Qualcomm seeks is necessarily irrelevant.  That argument suffers the same flaw:  It is the KFTC

15   Committee, rather than the Examiner, that will evaluate the evidence that is presented and

16   determine whether a violation has occurred.  (Lee Reply Decl. ¶ 9.)

17           In any event, the Companies' argument that the amicus letter alone is enough to warrant

18   denial of Qualcomm's applications is incorrect.  In re Application of Chevron Corp., 709 F.

19   Supp. 2d 283, 292 (S.D.N.Y. 2010) ("While the views of the Ecuadorian court could be helpful,

20   even opposition by it to these applications would not be dispositive."), aff'd sub nom. Chevron

21   Corp. v. Berlinger, 629 F.3d 297 (2d Cir. 2011).  Even if the Examiner's view that the KFTC

22   does not want or need evidence collected through § 1782 could be attributed to the KFTC

23   Committee, Qualcomm may use the evidence it collects to persuade the Committee that it should

24   reconsider that position and accept evidence supporting Qualcomm's defense.  See In re

25   Application of Grupo Qumma, No. M 8-85, 2005 WL 937486 at *3 (S.D.N.Y. 2005) ("[E]ven

26

27   _____

28   [10] Apple and MediaTek concede the KFTC's receptivity to § 1782 assistance in general by noting that if the KFTC "deemed U.S. discovery necessary to an investigation, it could pursue it through its own § 1782 application".  (Apple Opp. at 10 n.6; MediaTek Opp. at 12 n.5.)

10

assuming I were to agree with respondents that the Mexican court has held that no additional

evidence is admissible, Qumma would still have a fair argument that it should be given the

opportunity to ask the Mexican court to reconsider.  Qumma would still use the evidence to try to

persuade the Mexican court to change its ruling.").

Because the KFTC Committee will be receptive to § 1782 assistance, this factor weighs

in favor of Qualcomm's applications.

### C.    QUALCOMM'S APPLICATIONS DO NOT CIRCUMVENT KOREAN PROCEDURES, AND THE POLICY CONCERNS IN THE AMICUS LETTER CAN BE ACCOMMODATED.

The third Intel consideration is whether Qualcomm's applications "conceal[] an attempt

to circumvent foreign proof-gathering restrictions or other policies of a foreign country".  542

U.S. at 265.  The Companies argue that Qualcomm attempts to circumvent restrictions and

policies of the KFTC in several ways (Apple Opp. at 10-14; Intel Opp. at 14-16, MediaTek Opp.

at 13-15; Samsung Opp. at 16-18; TI Opp. at 9-10), but each misstates Qualcomm's intent and

misapprehends the Intel Court's explanation of this consideration.

As a preliminary matter, a contradiction running through the Companies' oppositions

must be addressed.  On one hand, some of the Companies suggest that if there is a procedural

mechanism in Korea for Qualcomm to obtain the requested material, it must take advantage of

that option so as not to "sidestep" Korean procedures.  (E.g., Intel Opp. at 13.)  On the other

hand, some of the Companies suggest that if there is *not* a procedural mechanism in Korea for

Qualcomm to obtain the requested material, then seeking and obtaining that material would

violate Korean policies.  (E.g., Apple Opp. at 12.)  If both propositions were correct, however,

there would be no scope left for § 1782; it would be a completely useless instrument.  In fact,

neither proposition is correct.

*First*, the Companies argue that Qualcomm is attempting to circumvent KFTC procedures

that Qualcomm should follow to request the evidence being sought.  (See, e.g., Apple Opp. at

11.)  These arguments elide important distinctions among the categories of documents that

Qualcomm has requested.  The KFTC Case Handling Procedures allow Qualcomm to request the

1  materials the Examiner chose to designate as exhibits to the ER.  (Lee Reply Decl. ¶ 10.)

2  Qualcomm has made such a request and has received some of those exhibits; the request for the

3  remaining exhibits is still pending.  (Lee Reply Decl. ¶ 10.)  But Samsung is wrong to contend

4  that Qualcomm is "asking the court to order Samsung to produce the same information that the

5  KFTC has chosen to withhold as confidential".  (Samsung Opp. at 17.)  In fact, Qualcomm's

6  applications to this Court are not limited to the ER exhibits.  Qualcomm seeks materials that the

7  Companies provided to the Examiner in the investigation phase (including those that were not

8  designated as exhibits) as well as other information the Companies did not provide to the

9  Examiner but that Qualcomm needs to address the Examiner's allegations.  The KFTC's Case

10  Handling Procedures do not say anything, one way or the other, about a procedure for

11  Qualcomm to seek such documents—some of which by definition could not be obtained from the

12  Examiner because they are documents the Companies did not produce to the Examiner.  Thus,

13  Qualcomm is not using its § 1782 applications to short-circuit Korean procedures for obtaining

14  the same evidence.[11]

15       *Second*, some of the Companies claim that there are Korean laws other than the KFTC's

16  Case Handling Procedures that Qualcomm could use to obtain the requested information.  (Apple

17  Opp. at 11; Intel Opp. at 5; MediaTek Opp. at 13.)  But these laws—Article 52-2 of the

18  Monopoly Regulation and Fair Trade Act and Article 9 of the Official Information Disclosure

19  Act—have not been interpreted to entitle examinees in KFTC proceedings to seek any

20  documents beyond what they can receive under the KFTC's Case Handling Procedures (*i.e.*, only

21  the exhibits to the Examiner's Report).  (Lee Reply Decl. ¶ 12.)  This is confirmed by the amicus

22  letter, which cites those laws as support for the proposition that Qualcomm "is entitled to obtain

23  copies of documents and data *supporting* the KFTC Examiner's report, which was submitted to

24  the KFTC Committee *to support* the preliminary findings of anticompetitive activity".  (KFTC

---

[11] In <u>In re Kreke</u>, by contrast, this consideration weighed against discovery because the applicant had the opportunity to obtain, through the foreign tribunal's procedures, the same discovery it sought in the § 1782 application.  2013 WL 5966916, at *6.  Likewise, the applicant in <u>In re Cathode Ray Tube (CRT) Antitrust Litig.</u>, "made no attempt to use the discovery processes that are available in the Korean courts".  2012 WL 6878989, at *3 (N.D. Cal. Oct. 22, 2012), <u>report and recommendation adopted.</u> No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013).

1    Ltr. at 2 (emphasis added).)  In other words, these laws have been interpreted consistently to

2    provide access only to the exhibits to the ER.

3           *Third*, on the other side of the coin, some of the Companies argue that it would

4    circumvent Korean policies to allow access to evidence that is *not* available through Korean

5    procedures.  That is not correct.  The Supreme Court expressly noted in Intel that "[a] foreign

6    nation may limit discovery within its domain for reasons peculiar to its own legal practices,

7    culture, or traditions; such reasons do not necessarily signal objection to aid from United States

8    federal courts".  542 U.S. at 244.  Furthermore, to the extent that a foreign discovery limitation is

9    based upon foreign policy concerns, courts should consider whether such concerns can be

10   accommodated by "appropriate measures", such as protective orders, as the Intel Court

11   suggested.  See id. at 265 (quoting In re Bayer AG, 146 F.3d 188, 196 (3d Cir. 1998)).  The EC-

12   related cases cited by many of the companies are not to the contrary.  Importantly, in the In re

13   Microsoft Corp. cases featured in Samsung's opposition, Microsoft had already been subjected to

14   an adverse decision by the EC, which established a Trustee to monitor Microsoft's compliance

15   and expressly prohibited the Trustee from providing any information concerning the

16   investigation to anyone but the EC.  See No. C 06-80038 JF (PVT), 2006 WL 825250, at *3

17   (N.D. Cal. Mar. 29, 2006).  The court noted that "[t]his is not a situation involving only a foreign

18   tribunal's general rules and procedures governing proof gathering", but involved a "tribunal's

19   specific order restricting a specific litigant's ability to gather evidence".  Id.  No such specific

20   order has been issued by the KFTC in this matter, which involves only the KFTC's "general

21   rules and procedures".  The Companies' reliance on Advanced Micro Devices v. Intel Corp., No.

22   C 01-7033, 2004 WL 2282320, at *3, (N.D. Cal. Oct. 4, 2004), is equally misplaced because the

23   applicant, AMD, was the complainant who initiated the proceedings before the EC.  AMD's

24   request was found to circumvent EC policies because, in the EC, complainants are not entitled to

25   obtain evidence from the examinee or determine the course of the EC's investigation, which

26   meant that AMD's request for discovery risked interfering with the EC's right to conduct its own

27   inquiries.  Id. at *3.  By contrast, Qualcomm, as the target of the KFTC's investigation, is

28

QUALCOMM'S OMNIBUS REPLY MEMORANDUM     Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG,
16-mc-80006-PSG, 16-mc-80007-PSG

1    expressly entitled by KFTC procedures to present a defense to the KFTC Committee and seeks

2    evidence to support that defense.

3         *Fourth*, the Companies argue that allowing discovery would disrupt Korea's antitrust

4    regime by providing Qualcomm and other examinees with greater access to information than the

5    KFTC possesses.  (See, e.g., TI Opp. at 9.)  That argument rings hollow from a group of

6    Companies seeking to prevent Qualcomm from obtaining access to documents that the KFTC

7    Examiner already has (though the KFTC Committee likely does not).  It is Qualcomm, not the

8    Companies, seeking to level the playing field.  As for evidence that has not already been

9    collected from the Companies, it is hard to fathom how additional information would undermine

10   Korean enforcement of its competition laws.  The KFTC Committee will retain the ability to

11   assess the weight and meaning of any evidence obtained through these § 1782 applications.  The

12   point of the applications is to gather evidence Qualcomm believes will allow the KFTC to make

13   a more informed decision.  In any event, there is no imbalance here.  As the record in this matter

14   shows, the KFTC Examiner is well-equipped to gather information from multinational

15   companies headquartered outside Korea.  And if it faced resistance from an entity residing or

16   found in the U.S., the KFTC Examiner itself could use § 1782 procedures.  See, e.g., In re Letter

17   of Request From Crown Prosecution Serv. of United Kingdom, 870 F.2d 686, 690 (D.C. Cir.

18   1989) ("A foreign legal affairs ministry, attorney general, or other prosecutor . . . fits squarely

19   within the section 1782 'interested person' category.").  Other components of the Korean

20   government, in fact, have used § 1782 to obtain such evidence.  Nat'l Court Admin. of the

21   Republic of Korea, No. C15-80069 MISC LB, 2015 WL 1064790, at *2.  Finally, the Intel Court

22   noted that concerns regarding parity among litigants can be accommodated by placing

23   appropriate conditions on the applicant's receipt of information.  See 542 U.S. at 266.  For

24   example, Qualcomm can be required to provide a copy of any evidence it obtains through § 1782

25   to the KFTC Examiner and case team.

26        *Fifth*, the Companies argue that Qualcomm's applications will circumvent the KFTC's

27   rules ensuring the confidentiality of private information obtained from third parties.  (See, e.g.,

28

1    Intel Opp. at 15-16.)  This argument stands in stark contrast with the Companies' argument that

2    Qualcomm can obtain access to these documents under Korean law.  More to the point, however,

3    the Intel Court indicated that courts hearing § 1782 applications have a variety of ways to

4    prevent the disclosure of confidential information and business secrets.  542 U.S. at 266 ("Nor

5    has it been shown that § 1782(a)'s preservation of legally applicable privileges . . . and the

6    controls on discovery available to the District Court . . . would be ineffective to prevent

7    discovery of Intel's business secrets and other confidential information.").  As Qualcomm noted

8    in its applications, it recognizes the need to protect such sensitive information and is prepared to

9    negotiate an appropriate protective order, including one that permits the Companies to redact

10   competitively sensitive information.  (See, e.g., Samsung App. at 11 n.5.)  And the Companies'

11   professed concern that once Qualcomm is able to use the documents in the KFTC proceeding,

12   their confidentiality can no longer be guaranteed (see, e.g., Samsung Opp. at 18) is unfounded.

13   Under Article 62 of the Monopoly Regulation and Fair Trade Act, KFTC officials are required to

14   maintain confidentiality.  (KFTC Ltr. Ex. A (Monopoly Regulation and Fair Trade Act) at 63.)

15   The need to protect confidential information does not justify denial of Qualcomm's

16   applications.[12]

17        *Sixth*, the Companies claim that providing § 1782 assistance to Qualcomm in this matter

18   will deter them and others like them from cooperating with future KFTC investigations because

19   such cooperation will expose them to the possibility of being required to provide discovery in

20   U.S. courts.  (See, e.g., MediaTek Opp. at 14.)  However, with respect to Qualcomm's requests

21

---

22   [12] To the extent that the Companies argue that the information Qualcomm seeks would not be available under U.S.
     agency and court procedures (see, e.g., Samsung Opp. at 18), they are simply wrong.  Although the Department of

23   Justice and the Federal Trade Commission are prohibited from publicly disclosing information they obtain during
     the course of civil investigations, that does not mean that such information would not be disclosed to a defendant

24   that is the subject of a lawsuit or agency enforcement action.  For example, in the FTC v. Sysco Corp. case cited by
     Samsung, the names of third parties who had provided evidence to the FTC had already been disclosed to the

25   defendant's external and in-house counsel pursuant to a protective order.  83 F. Supp. 3d 271, 273 (D.D.C. 2015).
     No one suggested that this information could be completely withheld from the defendant, as has occurred in this

26   case.  The court, furthermore, *rejected* the FTC's argument that the names should not be disclosed to other
     employees of the defendant, in part because the FTC's own Rules of Practice "strongly favor *public* disclosure" and

27   "express a strong presumption in favor of transparency".  Id. at 276 (emphasis in original).  The FTC's Rules of
     Procedures, furthermore, include discovery rules that are "similar to the Federal Rules of Civil Procedure" once

28   adjudicative proceedings have been initiated.  ABA Section on Antitrust Law, FTC Practice and Procedure Manual
     at 196 (2007).

15

1  for the information each company has provided to the KFTC, it would not be burdensome for the

2  companies to provide Qualcomm with a copy of such documents, and any confidential

3  information can be protected from use and disclosure by an appropriate protective order, as the

4  Intel Court anticipated.  542 U.S. at 266.  Furthermore, the companies could not have had a

5  realistic expectation that the information they provided to the Examiner would not be provided to

6  Qualcomm:  As the Companies concede, the KFTC procedures allow Qualcomm to obtain the

7  Examiner's exhibits, and no one can predict in advance which third-party documents the

8  Examiner will choose to designate as exhibits.  Thus, their argument boils down to a concern that

9  this Court will not effectively protect their confidential information as well as foreign tribunals, a

10  concern that has been rejected by this Court.  In re Ex Parte Apple Inc., No. MISC 12-80013 JW,

11  2012 WL 1570043, at *3 n.9 (N.D. Cal. May 2, 2012) ("Any concerns about confidentiality can

12  be addressed by the appropriate protective order.").[13]  Furthermore, there is another flaw in the

13  argument that the possibility of burdensome § 1782 discovery would deter cooperation with

14  foreign authorities, which is that the court considering a § 1782 application has the authority to

15  tailor the requests to take the burden into account.  It is not a reason to deny a § 1782 application

16  outright.

   The KFTC's policy concerns would not be circumvented by federal court assistance

17  under § 1782.  This factor weighs in favor of the requested discovery.

18

19      **D.  QUALCOMM'S REQUESTS ARE NARROWLY TAILORED AND JUSTIFIED BY THE SIGNIFICANCE OF THE MATTER.**

20

21      The final consideration of the Intel analysis also weighs in favor of granting Qualcomm's

22  applications because Qualcomm's requests for discovery are narrowly tailored to the allegations

23  Qualcomm must defend against in the KFTC and are neither "intrusive" nor "burdensome".

24  Intel, 542 U.S. at 265; see also In re Republic of Ecuador, No. C-10-80225, 2010 WL 3702427,

25

26  [13] All of the Companies cite the Report and Recommendation issued by a Special Master in In re Cathode Ray Tube (CRT) Antitrust Litig., 2012 WL 6878989, at *4, in support of an argument that discovery should be denied because Intel's confidential information "could become exposed and not protected in Korea".  (See, e.g., Intel Opp. at 18.)

27  That concern is contradicted both by the Intel Court's opinion, which noted that federal courts could employ procedures to prevent the use and disclosure of sensitive information, see 542 U.S. at 266, and by the KFTC's own procedures, which ensure that confidential information will be protected from public disclosure.  (Lee Reply Decl.

28  ¶ 12.)

16

QUALCOMM'S OMNIBUS REPLY MEMORANDUM          Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG, 16-mc-80006-PSG, 16-mc-80007-PSG

1    at *5 (N.D. Cal. Sept. 15, 2010) (finding that the final discretionary factor weighed in favor of

2    issuance of a subpoena when the applicant had made a "prima facie showing" that the

3    information it sought had "some relevance" to the foreign proceedings).

4          Furthermore, any practical concerns regarding the discovery the Companies will have to

5    provide, such as timing or the precise scope of the required production, should be addressed in

6    the first instance through meetings between Qualcomm and the Companies after the subpoenas

7    have been served.  See, e.g., Matter of Application of O2CNI Co., No. C 13-80125 CRB (LB),

8    2014 WL 689082, at *2 (N.D. Cal. Feb. 21, 2014) (granting a § 1782 application after narrowing

9    the scope of discovery at a hearing and ordering that, in the event of unforeseen additional

10   burdens, "[t]he parties must . . . meet and confer"); Ahmad Algosaibi & Bros. v. Standard

11   Chartered Int'l (USA) Ltd., 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting an "arguably

12   burdensome" application and directing the parties to "confer in an attempt to agree upon

13   reasonable discovery terms"); Republic of Ecuador v. Stratus Consulting, Inc., No. 13-CV-

14   01112-REB-KLM, 2013 WL 2352425, at *3 (D. Colo. May 29, 2013) ("Because the parties are

15   in the best position to negotiate a reasonable schedule for providing the depositions and

16   documents sought here, the Court will allow them an opportunity to do so.").

17         Qualcomm seeks three categories of documents.  First, Qualcomm seeks materials that

18   the Companies provided to the Examiner.  (See, e.g., Apple App. Ex. A at 5.)[14]  Such

19   information is likely to be relevant to the KFTC proceedings because it was requested by the

20   Examiner and deemed responsive by the Companies that provided it.  In addition, many of these

21   documents may provide context to the documents the Examiner chose to designate as exhibits to

22   the ER.  Because these materials have already been collected, providing them to Qualcomm

23   poses little burden.  See In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301, 306 (S.D.N.Y.

24   2002) (noting that defendants did not raise an undue burden argument "[f]or easily understood

25   reasons" when the documents requested had "already been compiled"); In re Enron Corp. Sec.,

26   Derivative & "Erisa" Litig., No. Civ. A. H-01-3624, 2002 WL 31845114 (S.D. Tex. Aug. 16,

27

28   _____
     [14] Where companies provided information to the KFTC case team orally, Qualcomm seeks deposition testimony so
     that it can learn the content of such oral communications.  (See, e.g., Apple App. Ex. B at 3.)

1  2002) (finding only a slight burden when the target of discovery had "already found, reviewed,

2  and organized the documents").  Qualcomm's request for documents quoted, cited or referenced

3  in the submitted materials poses only a modest incremental burden.

4  *Second*, Qualcomm seeks additional categories of documents directly related to certain

5  specific allegations made in the Examiner's Report, and deposition testimony concerning the

6  same topics.  (See, e.g., Apple App. Ex. A at 5; Ex. B at 3.)  Due to confidentiality restrictions

7  imposed by Korean law, Qualcomm is unable to give a detailed explanation of all specific

8  allegations in the Examiner's Report.  However, in general terms, Qualcomm has previously

9  disclosed that the ER alleges that it is unlawful for Qualcomm to license its patents exhaustively

10  only to manufacturers of complete devices like mobile phones and not to the manufacturers of

11  chipsets that go into such devices.  (See Byars Reply Decl. Ex A (Qualcomm's 10-Q dated

12  January 27, 2016).)[15]  Accordingly, Qualcomm has requested that chipset manufacturers produce

13  "[d]ocuments received by You . . . from a customer or potential customer of Modem Chipsets

14  sufficient to show any concerns . . . regarding Your lack of an exhaustive license from

15  Qualcomm to Cellular IPR", as well as "[d]ocuments . . . sufficient to show any decision by You

16  to limit Your sales or Your development of Modem Chipsets . . . due to Your lack of an

17  exhaustive license from Qualcomm to Cellular IPR".  (See, e.g., MediaTek App. Ex. A at 5.)

18  Those requests go directly to the question of whether the lack of an exhaustive license adversely

19  affected the chipset manufacturers' ability to compete.  Similarly, Qualcomm requests from

20  Apple (1) "[d]ocuments . . . sent by You to Qualcomm sufficient to show any request by Apple

21  to Qualcomm for a license *only* to Cellular IPR or any response by Qualcomm to such a request"

22  and (2) "[d]ocuments . . . sent by You to Qualcomm sufficient to show any request by Apple for

23  a list of any Qualcomm IPR or any response by Qualcomm to such a request" (Apple App. Ex. A

24  at 5 (emphasis in original)) because the Examiner alleges that such requests were made by

25  Apple.

26

27

28

[15] References to the "Byars Reply Decl." are to the Reply Declaration of M. Brent Byars in Support of Qualcomm's Ex Parte Applications, signed on February 7, 2016 and filed together with this Reply.

1     Qualcomm is not asking for all documents relating to all allegations, so any concern that

2   the Companies will be required to conduct extensive, burdensome review is misplaced.

3   Qualcomm is rather asking that the Companies conduct a reasonably targeted review and

4   produce only documents "sufficient to show" whether the events at issue have or have not

5   occurred.  See In re Ex Parte Application of Ontario Principals' Council, No. 5:13-mc-80237-

6   LHK-PSG, 2013 WL 6073517, at *3 (N.D. Cal. Nov. 8, 2013) ("By narrowly tailoring the[ir]

7   request, Applicants have mitigated any burden . . . .").  If the events described in the allegations

8   have occurred, the relevant documents likely would have been collected and provided to the

9   Examiner.  And if, as Qualcomm believes, the described events have not occurred, then the

10   responding Companies will need to produce no documents in response to these requests.  Either

11   way, these requests do not impose a significant burden on the Companies.

12     *Third*, Qualcomm requests from Apple and Samsung documents filed or served by

13   Samsung in certain litigations to the extent the documents concern "the licensing of Cellular IPR

14   or damages alleged to have resulted from infringement of Cellular IPR", and testimony from

15   Samsung regarding arguments it has made in such litigation.  (See Apple App. Ex. A at 5-6;

16   Samsung App. Ex. A at 5; Ex. B at 3.)  These documents are relevant because Qualcomm

17   believes that Samsung has taken positions before the KFTC that are undermined by—and

18   possibly contradicted by—the assertions it has made in U.S. and Korean litigation.  For example,

19   in its litigation with Apple in this District, Samsung's expert economist testified that it was

20   "industry practice" for companies licensing IPR for use in mobile devices to obtain a royalty

21   based upon the "net sales price of a product" (*i.e.*, the mobile device), rather than, for example,

22   the price of the chipset included in such a device.  (Byars Reply Decl. Ex. B (Trial Tr.) at 3126-

23   27.)  That industry-wide practice is directly relevant to the allegation described above regarding

24   Qualcomm's licensing of device manufacturers as opposed to chipset manufacturers.[16]

25

26   _____

27   [16] Samsung does not dispute that it has taken positions in litigation that are inconsistent with positions it has taken
    before the KFTC, but cites U.S. antitrust law to claim that its positions regarding these issues in litigations are
    irrelevant because Qualcomm has monopoly power but Samsung does not.  (Samsung Opp. at 15.)  Even if that were

28   true, Samsung's argument is off base as a matter of *Korean* law.  In determining whether a violation of certain
    provisions of Korean competition law has occurred, Korean courts and regulators specifically consider, among other

19

1    Notwithstanding the narrow scope of the requests, the Companies raise several burden

2    arguments in the oppositions.  All of these are unavailing.

3    Apple and Samsung argue that complying with various protective orders in the relevant

4    litigations will be costly and time consuming.  (Apple Opp. at 16-17; Samsung Opp. at 19.)

5    However, they do not sufficiently explain why such cost and time would be unjustified in light of

6    the relevance of the information Qualcomm seeks.[17]  Moreover, the precedent relied upon by

7    Apple is unpersuasive because the applicant there sought "all of the discovery in a large antitrust

8    case".  See In re Cathode Ray Tube, 2012 WL 6878989, at *3.  Qualcomm does not seek

9    anywhere near "all of the discovery" in Apple's litigations with Samsung, but rather documents

10   that Samsung actually filed or served in connection with those litigations, and among those, only

11   those documents that relate to two specifically defined topics.  Furthermore, Apple argues that

12   Qualcomm's request for litigation documents is "duplicative" because Qualcomm makes the

13   same request of Samsung.  (Apple Opp. at 16.)  Qualcomm acknowledges that it does not need to

14   obtain the same documents from both Apple and Samsung, but that practical issue can be

15   addressed after the subpoenas are served and does not justify denial of Qualcomm's applications

16   to serve the subpoenas in the first place.

17   The Companies also generally argue that both the geographic (see, e.g., Apple Opp. at

18   17-18) and temporal (see, e.g., Samsung Opp. at 19-20) scope of Qualcomm's requests are

19   overbroad, but those objections are unavailing.  For example, Apple's objection that "[n]ot one

20   request is limited to activity in or affecting Korea" (Apple Opp. at 18) is without merit because

21   the KFTC's investigation is also not so limited.  (Byars Reply Decl. ¶ 6.)  In addition, the

22

23   things, whether a company's business practices are unreasonable in light of normal trading practices.  (See Lee
     Reply Decl. ¶ 9.)  Samsung's position concerning industry-wide practices is directly relevant to that consideration.

24   [17] Apple suggests that the burden is unjustified because the KFTC has indicated "it has no need or use for the
     requested discovery".  (Apple Opp. at 16-17.)  But as shown above, the premise of that argument is flawed.  There is

25   good reason to believe the KFTC Committee would be receptive to such evidence.  In any event, Apple is mixing
     the various factors of the Intel test.  The proper inquiry under the last Intel factor is whether there is undue burden

26   "given the relevance of the information".  See In re Republic of Ecuador, 2010 WL 3702427, at *5 (emphasis
     added).  Intel raises a similar argument that Qualcomm's discovery requests are "per se unduly burdensome"

27   because of the statements in the Examiner's amicus letter.  (Intel Opp. at 18.)  But in the case on which Intel relies,
     Advanced Micro Devices, 2004 WL 2282320, at *3, the court had already determined that "three of the four [Intel]

28   factors" weighed against granting the application and viewed it as "purely academic to address the final factor".
     That dicta cannot provide the basis for a per se rule.

QUALCOMM'S OMNIBUS REPLY MEMORANDUM                    Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG,
                                                       16-mc-80006-PSG, 16-mc-80007-PSG

1   temporal scope of Qualcomm's requests is not unduly burdensome. While the Companies point

2   to this Court's order denying discovery in <u>Thompson v. Doel</u> to claim that producing five years

3   of emails carries undue burden, Qualcomm's applications present entirely different

4   circumstances. No. 5:13-mc-80088-EJD (PSG) (N.D. Cal. May 21, 2013), ECF No. 2. Unlike

5   the applicant in <u>Thompson,</u> Qualcomm gives an explanation for the breadth of its discovery

6   requests, attempting to limit its requests to the time period covered by the relevant allegations in

7   the ER. (Byars Reply Decl. ¶ 6.) Moreover, Qualcomm asks for specific categories of

8   documents (including documents "sufficient to show" whether certain specific events took

9   place), whereas the applicant in <u>Thompson</u> requested the contents of all responsive emails

10  spanning a five-year period. No. 5:13-mc-80088-EJD, ECF No. 2, at 3-4.[18]

11       In addition, the Companies rely on <u>Advanced Micro Devices, Inc. v. Intel Corp.</u>, 2004

12  WL 2282320 at **2-3, but the applicant there had requested 70 different categories of

13  documents, 67 of which came from an entirely separate litigation. <u>Id.</u> at *1. The Court therefore

14  concluded that the applicant had intentionally made overbroad requests. <u>Id.</u> at *3. Here, on the

15  other hand, Qualcomm has asked for at most four categories of documents and four topics of

16  testimony from the Companies, all of which are narrowly tailored to allegations raised in the ER.

17  Qualcomm is not intentionally drafting broad requests or engaging in a "fishing expedition". <u>Cf.</u>

18  <u>Matter of Application of O2CNI Co.</u>, No. C13-80125 CRB (LB), 2013 WL 5826730, at **15-16

19  (N.D. Cal. Oct. 29, 2013); <u>In re ex parte Application of Ontario Principals' Council</u>, 2013 WL

20  6073517, at *3.

21       Finally, both Apple and TI argue that Qualcomm may already have access to some of the

22  information it requests of them. (Apple Opp. at 15; TI Opp. at 11.) However, Qualcomm

23  requests that TI produce communications between TI and its customers and internal documents

24  showing decisions by TI; there is no reason to assume that Qualcomm would already have access

25

26

27  ---
    [18] The Companies further cite <u>In re Veiga</u>, 746 F. Supp. 2d 8, 26 (D.D.C. 2010). But there, the court weighed
    against the applicant the fact that the requested documents were located outside the United States and therefore

28  burdensome to produce (an issue addressed below in Part IV); not that the requests failed to address activity in the
    location of the foreign tribunal.

1  to such documents.[19]  As for Apple, although Qualcomm does seek communications between

2  Apple and Qualcomm, Qualcomm has searched its files and has been unable to locate those

3  materials.  Qualcomm's request is intended to confirm that those communications have not

4  actually occurred.

5                                        *         *         *

6          As shown above, the Intel factors militate in favor of granting Qualcomm's applications.

7  In addition, the Court should take into consideration the serious consequences of an adverse

8  KFTC decision, which may impose both monetary sanctions and remedial measures regarding

9  Qualcomm's licensing practices (Lee Reply Decl. ¶ 9), and the extent to which Qualcomm needs

10  this discovery to defend itself in the upcoming proceedings.  See Ahmad Algosaibi & Bros., 785

11  F. Supp. 2d at 439 ("Given AHAB's legitimate need for at least some of the requested materials,

12  the Court hereby grants AHAB's [§ 1782] petition" despite "potentially substantial burdens on

13  respondents . . ."); Fed. R. Civ. P. 26(b)(1) (directing district courts determining discovery issues

14  to consider "the importance of the issues at stake in the action", "the importance of the discovery

15  in resolving the issues" and whether the discovery is "proportional to the needs of the case").

16  These circumstances give rise to a real need that should further weigh in favor of granting

17  Qualcomm's applications.

18  **III.      THE SAMSUNG ENTITIES ARE FOUND IN THIS DISTRICT.**

19          Samsung argues that this Court lacks statutory authority to order it to provide discovery

20  because the Samsung entities are not "found" in this District.  (Samsung Opp. at 5-10.)  Samsung

21  agrees that the "systematic and continuous contacts" test governs the analysis of whether it is

22  "found" in this District, but also asserts that under § 1782, Samsung must be subject to general

23  jurisdiction in this District, such that it may be sued here for claims that do not arise out of its

24  local contacts.  However, courts that have considered this question have determined that

25

26  ───────────────

[19] Qualcomm also disagrees with TI's suggestion that its departure from the modem chipset business in 2008 makes
27  Qualcomm's requested discovery unduly burdensome.  (TI Opp. at 10-12.)  TI does not explain why it would be
    onerous to search for documents from that period, and it also fails to show that any burden the company would
28  experience outweighs the relevance of the requested discovery to Qualcomm.  Further, these issues are
    quintessential matters for meet-and-confer discussions among counsel.

although a company subject to general jurisdiction may be "found" in the District, the existence of general jurisdiction is not necessary to meet the requirements of § 1782.  See In re Edelman, 295 F.3d 171, 179 (2d Cir. 2002) ("Given that this so-called tag jurisdiction is consistent with due process, we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more."); In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L., No. 08-20378-MC, 2011 WL 181311, at *8 (S.D. Fla. Jan. 19, 2011).  The cases Samsung cites to show that, in the context of general jurisdiction, a corporation must be "at home" in the district or at least have contacts approximating "physical presence" in the district are therefore inapposite to the § 1782 analysis.  Although the Samsung entities are not incorporated or headquartered in this District (Samsung Opp. at 7 n.4), each of them has still engaged in "systematic and continuous" business activities that render each "found" here for the purposes of § 1782.  See In re Godfrey, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007).

Specifically, as noted in more detail below, the Samsung entities have engaged in the following three activities which, *when taken together*, allow the Court to conclude that each is "found" in this District:  (1) all three Samsung entities have availed themselves of the jurisdiction of this Court; (2) SEA and STA are or have been registered and authorized to conduct business in the state of California; and (3) SEC's wholly-owned subsidiary, Samsung Research America, Inc., is a California corporation that is headquartered in this District. Samsung cites cases establishing that each of these contacts or types of contacts, *when considered alone*, is insufficient to establish that Samsung is found in this District.  (Samsung Opp. at 7-10.)  But Qualcomm does not argue that any of these contacts or types of contacts is sufficient by itself.  Rather, when considered together, Samsung's contacts are "systematic and continuous activities" in this District.  See Coremetrics, Inc. v. Atomic Park.com, LLC, 370 F. Supp. 2d 1013, 1024 (N.D. Cal. 2005) ("[E]ven though AtomicPark's contacts with California taken individually would not sustain general jurisdiction, the Court concludes that, based on the totality of the contacts, they are sufficiently substantial, continuous, and systematic so as to support a finding of general jurisdiction.").

1    *First*, Qualcomm has demonstrated that each of the Samsung entities has participated in

2    ongoing, protracted litigation with Apple in this District. Samsung argues that the Court should

3    not consider such litigation, but the cases it cites do not support that position. In many of those

4    cases, the litigation used as a "hook" was unrelated to the case in which jurisdiction was in

5    question.[20] Here, by contrast, Samsung's litigation with Apple in this District is directly related

6    to Qualcomm's § 1782 application because Samsung's positions in that litigation are one of the

7    subjects of requested discovery. In many other cases, the prior litigation was the *only* contact the

8    party had with the forum.[21] Here, as explained more fully below, Qualcomm asserts that each of

9    the Samsung entities has at least one additional contact with this District beyond its litigation

10    with Apple. Finally, unlike in <u>In re Rosuvastatin Calcium Patent Litig.</u>, where the court found it

11    relevant that the company had been haled into the forum as a defendant, Samsung was both a

12    plaintiff and counterclaimant in its litigation with Apple. No. CIV. 07-359-JJF-LPS, 2009 WL

13    4800702, at *6 (D. Del. Dec. 11, 2009), <u>report and recommendation adopted,</u> No. CIV.A 07-805-

14    JJF, 2010 WL 661599 (D. Del. Feb. 19, 2010). Thus, Samsung's litigation in this District counts

15    towards the systematic and continuous contacts required by § 1782.

16

17

---

18    [20] <u>See</u> <u>Soma Med. Int'l v. Standard Chartered Bank</u>, 196 F.3d 1292, 1296 (10th Cir. 1999) (finding that filing suit to

19    "recover monies and/or foreclose on trust deeds" did not render the company subject to general jurisdiction in a
       breach of contract case); <u>Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.</u>, No. CIV.A. H-10-1708,

20    2012 WL 590926, at *4 (S.D. Tex. Feb. 22, 2012) ("[A]ctively participat[ing] in recent, *unrelated* litigation" is
       "insufficient . . . to make a nonresident defendant subject to general jurisdiction in the forum state") (emphasis

21    added); <u>Blackwell v. Marina Assocs.</u>, No. Civ.A 05-5418, 2006 WL 573793, at *5 (E.D. Pa. Mar. 9, 2006) ("[T]he
       fact that defendant has brought suit in Pennsylvania . . . is immaterial" because "there is no allegation that
       Blackwell's personal injury claim has any relationship with any of these other actions"); <u>Travelers Cas. & Sur. Co.</u>

22    <u>v. Interclaim (Berm.) Ltd.</u>, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004) ("Travelers . . . has not carried its burden by
       providing any authority whatsoever for the dubious proposition that general jurisdiction may be asserted on the basis

23    of involvement in an *unrelated* lawsuit." (emphasis added)).
       [21] <u>See</u> <u>Grynberg v. Ivanhoe Energy, Inc.</u>, 490 Fed. App'x 86, 95 (10th Cir. 2012) ("Mr. Friedland's contacts with

24    Colorado—all of which arise out of litigation over the Summitville Mine cleanup—satisfy none of these criteria.");
       <u>In re Roebers</u>, No. C12-80145 MISC RS LB, 2012 WL 2577585, at * 3 (N.D. Cal. July 3, 2012) (finding that

25    conclusory statements regarding the location of records *alone* are insufficient to establish that corporations were
       "found" in this District under § 1782); <u>Merlino v. Harrahs Entm't, Inc.</u>, No. 05 CV 6660, 2006 WL 401847, at *3

26    (E.D. Pa. Feb. 17, 2006) ("Filing even nineteen lawsuits, *without more*, cannot constitute continuous and systematic
       activity . . . ." (emphasis added)). <u>See also</u> <u>United States ex rel. Banignan v. Organon USA Inc.</u>, No. CIV.A. 07-

27    12153-RWZ, 2012 WL 1190826, at *5 (D. Mass. Apr. 9, 2012) ("None of these contacts *alone* is sufficiently
       'continuous and systematic' to justify the exercise of general jurisdiction . . . ." (emphasis added)); <u>Jones v. Blige</u>,

28    No. 04-60184, 2006 WL 1329247, at *5 (E.D. Mich. May 16, 2006) ("That basis as a hook for general jurisdiction
       has been rejected.").

24

QUALCOMM'S OMNIBUS REPLY MEMORANDUM                Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG,
                                                   16-mc-80006-PSG, 16-mc-80007-PSG

1    *Second*, Qualcomm has established that SEA and STA are or have been licensed to

2    transact business in this State.  Samsung cites cases holding that registering to do business in a

3    state and/or designating a local agent for service of process is insufficient to establish a

4    "presence" in that state.  (Samsung Opp. at 9.)  However, in those cases, the courts determined

5    that if a company's *sole* contact with the forum was registering to do business and/or appointing

6    an agent in the forum for service of process, it would not be subject to general jurisdiction.[22]  In

7    fact, other cases have recognized that designating an agent for service of process and holding a

8    license *support* a finding of continuous and systematic contacts.  See, e.g., Bancroft & Masters,

9    223 F.3d 1082, 1086 (9th Cir. 2000); Hirsch v. Blue Cross, Blue Shield of Kansas City, 800

10   F.2d 1474, 1478 (9th Cir. 1986).  Under California law in particular, registering to do business

11   manifests a company's intent to engage in repeated and successive business activities in this

12   State.  See Cal. Corp. Code § 2105(a) ("A foreign corporation shall not transact intrastate

13   business without having first obtained from the Secretary of State a certificate of qualification");

14   Cal. Corp. Code § 191(a) ("For the purposes of Chapter 21 (commencing with Section 2100),

15   'transact intrastate business' means entering into *repeated and successive transactions of its*

16   *business* in this state . . . ." (emphasis added)).  Accordingly, the Court should take into account

17   the fact that SEA and STA are or were registered and authorized to do business in California

18   when deciding if Samsung's activities in this District are "systematic and continuous".

19   *Third*, Samsung acknowledges that one of its subsidiaries maintains a permanent

20   headquarters in this District, but cites cases to show that the presence of a wholly-owned

21   subsidiary within a district is insufficient to establish that the parent is "found" there.  (Samsung

22   Opp. at 9.)  However, one court rejected that factor only to the extent it was the *sole* reason the

23   _____

24   [22] See King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579 (9th Cir. 2011) ("[T]he Companies' *sole* contacts with Montana are their initial Certificates of Authorization and their appointments of . . . an agent for service of process."

25   (emphasis added)); Overhill Farms, Inc. v. W. Liberty Foods LLC, No. CV 14-03533-RSWL, 2014 WL 4180920, at *4  (C.D. Cal. Aug. 21, 2014) ("[W]hile it is relevant that Defendant may be registered to do business and has designated an agent for service of process in California, these acts *alone* are insufficient to support a finding of

26   general jurisdiction . . . ." (emphasis added)); Presidio Home Care, LLC v. B-East, LLC, No. CV 14-1864 RSWL JEMX, 2014 WL 2711299, at *4 (C.D. Cal. June 13, 2014) ("While the designation of an agent for service of process is certainly relevant to a finding of general jurisdiction, it is by no means dispositive."); World Lebanese

27   Cultural Union, Inc. v. World Lebanese Cultural Union of N.Y., Inc., No. C 11-01442 SBA, 2011 WL 5118525, at *4 (N.D. Cal. Oct. 28, 2011) ("California courts . . . have declined to find that a party has consented to a state's

28   jurisdiction *merely* by appointing an in-state agent for service of process." (emphasis added)).

1    court could decide that the parent was "found" in the district, <u>see</u> <u>In re Application of Nokia</u>

2    <u>Corp.</u>, No. 1:07-MC-47, 2007 WL 1729664, at *4 n.3 (W.D. Mich. June 13, 2007) ("Nokia does

3    not suggest that the Court may conclude that Bosch resides in or is present in this district *merely*

4    because a Bosch subsidiary is present here." (emphasis added)), and another disregarded a local

5    office because the subsidiaries were not headquartered or incorporated in the District.  <u>See</u> <u>In re</u>

6    <u>Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC</u>,

7    No. 14 CIV. 1801 NRB, 2014 WL 3404955, at *5 (S.D.N.Y. July 9, 2014).  These cases do not

8    stand for the proposition that a subsidiary's headquarters in the District cannot support, together

9    with other ties, a finding of systematic and continuous contacts.

10       The combination of facts presented by Qualcomm demonstrate that the Samsung entities

11   are "found" here and, thus, that Qualcomm has established all the statutory requirements to

12   obtain discovery from Samsung under § 1782.[23]

13   **IV.    <u>THIS COURT MAY AUTHORIZE THE DISCOVERY OF DOCUMENTS
         OUTSIDE THE UNITED STATES.</u>**

14

15       Samsung and MediaTek seek to add a fourth statutory requirement to § 1782 by arguing

16   that the Court "must" deny Qualcomm's application for discovery because "much of the

17   requested materials are held outside the United States", and the Court therefore "lacks authority

18   under § 1782 to compel their production".  (Samsung Opp. at 10; <u>see also</u> MediaTek Opp. At 6-

19   8.)  As a threshold matter, it should be noted that Samsung's responses suggest that at least *some*

20   of the requested materials are held within the United States (Samsung Opp. at 10 n.7), and it is

21   undisputed that the Court may order the production of those materials.  As for the materials

22

23   [23] Samsung also argues in the alternative that Qualcomm must show both that the "found" requirement is satisfied
     and that this Court has personal jurisdiction over Samsung. (Samsung Opp. at 6 n.3.)  However, courts determining

24   § 1782 cases have not separately analyzed jurisdiction from the statutory requirement that the person from whom
     discovery is requested be "found" in the District.  <u>See In re Application of Thai-Lao Lignite (Thai.) Co.</u>, 821 F.

25   Supp. 2d 289, 295 n.4 (D.D.C. 2011) ("Courts considering whether to grant a petition for assistance pursuant to 28
     U.S.C. § 1782 have analyzed their authority by referencing the language in Section 1782—whether it is a district 'in

26   which a person resides or is found'—rather than discussing whether the Court has subject matter and personal
     jurisdiction over the entity or person from whom discovery is sought.").  Even if the court did apply the standards

27   governing personal jurisdiction, it would still be required to consider all of Samsung's contacts with the District
     together rather than in isolation.  <u>Coremetrics</u>, 370 F. Supp. 2d at 1021 ("The Court's inquiry . . . is not limited to an

28   analysis of each of the above contacts taken in isolation.  Rather, in determining whether there is general
     jurisdiction, the Court looks at the totality of the contacts . . . .").

26

1    found abroad, the Supreme Court in Intel did not hold that materials must be found within the

2    United States, and rejected calls to place "across-the-board" limitations on § 1782 discovery that

3    were not found in the language of the statute.  See Intel, 542 U.S. at 260 ("If Congress had

4    intended to impose such a sweeping restriction on the district court's discretion . . . it would have

5    included statutory language to that effect.") (quoting Application of Gianoli Aldunate, 3 F.3d 54,

6    59 (2d Cir. 1993)).  Rather than point to anything in the text of the statute, Samsung argues that

7    the legislative history of § 1782 reveals that Congress intended to include a bar to discovery of

8    materials located outside the United States.  (Samsung Opp. at 11.)  But the courts "do not resort

9    to legislative history to cloud a statutory text that is clear".  Ratzlaf v. United States, 510 U.S.

10    135, 147-148 (1994).  The text of the statute unambiguously includes only three requirements,

11    none of which pertains to the location of the materials sought.  See 28 U.S.C. § 1782(a); In re

12    Republic of Ecuador, 2010 WL 3702427, at *2.  Therefore, the legislative history as understood

13    by Samsung is irrelevant.

14            The argument that the "clear weight of authority" has disallowed discovery of documents

15    outside the United Statutes under § 1782 is also incorrect.  (Samsung Opp. at 11.)  In fact,

16    multiple courts have held that applications for foreign discovery may be granted even when the

17    documents sought are not located in the U.S.  See, e.g., In re Chevron Corp., No. 11-24599-CV,

18    2012 WL 3636925, at *10 (S.D. Fla. June 12, 2012) ("This Court finds no limitation in § 1782

19    that prohibits the production of documents that are located abroad."); In re Application of Eli

20    Lilly & Co., No. 3:09MC296 (AWT), 2010 WL 2509133, at *4 (D. Conn. June 15, 2010)

21    (finding it relevant for purposes of § 1782 whether the party resisting discovery has "control and

22    ability to obtain" documents outside the U.S.); In re Application of Gemeinschaftspraxis Dr.

23    Med. Schottdorf,  No. Civ. M19-88 BSJ, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006)

24    ("Section 1782 requires only that the *party* from whom discovery is sought be "found" here; not

25    that the *documents* be found here." (emphasis in original)).[24]

26

27    _____

28    [24] Samsung cites to two cases from the Southern District of New York in support of its argument. (Samsung Opp. at 12.)  Those cases (and others invoked by Samsung) rely heavily on the Second Circuit's opinion in Application of Sarrio, S.A., which noted that "there is reason to think that Congress intended [§ 1782] to reach only evidence located within the United States".  119 F.3d 143, 147 (2d Cir. 1997).  However, the court there did not

At most, the location of the information should be a discretionary consideration, analyzed as part of considering whether obtaining and producing the requested materials imposes an undue burden on the responding parties. <u>Gemeinschaftspraxis</u>, 2006 WL 3844464, at *5. <u>See also</u> <u>Thai-Lao Lignite</u>, 821 F. Supp. 2d at 297 ("[A] court may . . . consider the geographical location of information in determining whether the exercise of its discretion is warranted."). When viewed in that light, the fact that some documents responsive to Qualcomm's requests may be located outside the United States should not bar their production, let alone result in denial of Qualcomm's applications.

As for the specific arguments raised in this context by some of the Companies, none is availing.

- Samsung will experience no undue burden if required to produce the requested information, even if these documents are located abroad. Qualcomm has asked for narrowly tailored discovery, including documents that Samsung already has assembled to provide to the KFTC, and those documents should be readily accessible and transferable to the United States—just as Samsung has surely transferred many thousands of documents when it chose to litigate in the District.

- MediaTek acknowledges that it is found in this District, but argues that its foreign affiliates are not (MediaTek Opp. at 6-7) and that it has no relevant documents in its possession, custody or control. But MediaTek's declaration does not describe what minimal efforts, if any, it took to determine whether it had possession, custody or control of documents responsive to Qualcomm's requests. (Loh Decl. ¶ 10.) MediaTek should not be able to use conclusory assertions regarding its lack of responsive documents to defeat the subpoena before it is even served.

---

affirmatively decide the issue and even noted that "[o]n its face, § 1782 does not limit its discovery power to documents located in the United States". <u>Id.</u> at 146-47; <u>see also</u> <u>In re Potanina</u>, No. 14 MISC. 31 LAP, 2015 WL 750656, at *2 (S.D.N.Y. Jan. 9, 2015). Additionally, the Second Circuit recognized that even if the <u>Sarrio</u> *dicta* would be considered binding, it would not prevent the taking of testimonial evidence from persons in the U.S. concerning events that occurred outside of the U.S. <u>See</u> <u>In re Edelman</u>, 295 F.3d at 177 ("What a person will testify to is located wherever that person is found.").

28

QUALCOMM'S OMNIBUS REPLY MEMORANDUM                    Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG,
16-mc-80006-PSG, 16-mc-80007-PSG

1

- Apple, finally, objects only that some documents "are believed to be located

2         outside the United States with Apple's Korean counsel". (Apple Opp. at 18 n.12.)

3         Plainly, however, Apple has control over such documents, and it would pose little

4         burden for Apple to produce them in the United States. In any event, Apple's

5         vague assertion should not defeat Qualcomm's application or prevent issuance of

6         the subpoena.

## V.    <u>CONCLUSION</u>

8         Qualcomm respectfully requests that its applications to obtain discovery for use in a

9   foreign proceeding be granted.

10

11   Dated: February 7, 2016                    CRAVATH, SWAINE & MOORE LLP

12

13                                             By:  ___s/ Gary A. Bornstein_____

14

15                                             MORGAN, FRANICH, FREDKIN,

16                                                 SIAMAS & KAYS

17

18                                             Attorneys for Applicant

19                                                 QUALCOMM INCORPORATED

20

21

22

23

24

25

26

27

28

QUALCOMM'S OMNIBUS REPLY MEMORANDUM      Nos. 16-mc-80002-PSG, 16-mc-80003-PSG, 16-mc-80005-PSG, 16-mc-80006-PSG, 16-mc-80007-PSG